# SOUTH UTAH MINES & SMELTERS *v.* BEAVER COUNTY.

## ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE DISTRICT OF UTAH.

No. 321.   Argued March 15, 1923.—Decided May 21, 1923.

1. In an action at law tried by the District Court without a jury, the court, after deciding the case upon a general finding, may make special findings of fact and incorporate them in the record, if all this is done at the same term.   P. 329.
2. Under the Utah Constitution, which contemplates that all property shall be taxed according to its money value, and, as a means of valuing metaliferous mines, provides that, in addition to an arbitrary valuation of five dollars per acre, they shall be assessed at a value based on some multiple or sub-multiple of their net annual proceeds; and under Utah Laws 1919, c. 114, which adopts three as the multiple for valuing metaliferous mines, (providing that all other mines and valuable mineral deposits shall be assessed at their true value;) and defines net annual proceeds as the net proceeds realized during the preceding calendar year from the sale, or conversion into money or its equivalent, of all ores extracted by the owner, lessee, contractor or other person working upon or operating the property during or previous to the year for which the assessment is made, including all dumps and tailings, after making certain deductions. *Held:* (a) That tailings, left as refuse from the concentration of ore derived from a mine long since worked out, and which were situate on land remote from the mine and had an ascertained and adjudicated value of their own, constituted a unit of property entirely apart from the mine. P. 332.
   (b) That an agreement of the owner of the mine and the tailings, under which a leasing company took possession of and worked the tailings and paid the owner a per cent. of the net recovery, was a lease and left the owner subject to taxation on the value of the tailings during the process of extraction.   *Id.*
   (c) But that an attempt to tax the owner, upon the assumption that the tailings were part of the mine, by assessing the value at three times the entire proceeds extracted from the tailings by the lessee, during the tax year, was void.   *Id.*

3. It is the duty of the Court to construe state statutes, if possible, so as to remove all doubt of their validity under the Fourteenth Amendment. P. 331.

Reversed.

ERROR to a judgment of the District Court, in favor of the County, in an action brought against it to recover the amount of a tax paid under protest.

*Mr. C. C. Parsons,* with whom *Mr. Fisher Harris* and *Mr. E. O. Leatherwood* were on the briefs, for plaintiff in error.

*Mr. Harvey H. Cluff,* Attorney General of the State of Utah, and *Mr. William A. Hilton,* for defendant in error, submitted. *Mr. J. Robert Robinson, Mr. W. Hal Farr* and *Mr. Lawrence A. Miner* also were on the brief.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

This is an action brought by the plaintiff in error (plaintiff below) against the defendant in error (defendant below) in the Federal District Court for the District of Utah to recover a tax alleged to have been illegally imposed by the state taxing authorities and paid under protest. The plaintiff is a mining corporation organized and existing under the laws of Maine, and since 1909 has owned mining property in Beaver County, Utah, consisting of mining claims, a concentrating mill, now obsolete and largely dismantled, and other property incident thereto. The property was continuously operated until August, 1914. The ores were copper-bearing and upon extraction were transported to the mill and there crushed and concentrated, the resulting concentrates being shipped and sold to smelters at some distance away. As a result of the concentrating operations refuse material, still retaining small quantities of copper and other metals, was deposited near the concentrating mill as

tailings. This deposit was begun by plaintiff's predecessor as early as May, 1903, and from then until August, 1914, approximately 900,000 tons of tailings were accumulated upon desert land owned by plaintiff, non-mineral in character, and located about three miles from its mining claims. At the time of the accumulation of these tailings there was no known process by which the small percentage of metals which they contained could be profitably recovered. In August, 1914, plaintiff stopped work on its mining claims and has never since resumed. The court below expressly found that at the date last mentioned all ores which could be profitably mined under processes then or since known had been taken out, and that plaintiff's mine, excluding the tailings, had never since been of any value; that plaintiff had never abandoned its property but had maintained its title and paid and discharged all taxes assessed against it; and that, on January 1, 1919, the said tailings deposit was of the value of $20,000.

In January, 1914, plaintiff made an agreement with the Utah Leasing Company for the treatment and reduction of this deposit upon a royalty of ten per cent. The leasing company took possession of the tailings, constructed reduction works, using in connection therewith some of the plaintiff's improvements on its mining property, and, as a result of its operations, recovered from the tailings in the year 1918 the net amount of $120,547, ten per cent. only of which was paid over to the plaintiff, under the terms of the agreement. The taxing authorities, claiming to act under the state constitution and laws, multiplied the amount thus recovered by three and fixed the value of plaintiff's mining property for the year 1919 for taxing purposes at the multiple thereof, viz., $361,641. The defendant thereupon assessed and collected from plaintiff $6,907.34 as a tax against plaintiff's

mining property for the year 1919, based upon a valuation computed in the manner just stated.

The Constitution of Utah declares (§§ 2 and 3, Article XIII) that all property in the State shall be taxed in proportion to its value, and requires the legislature to provide a uniform and equal rate of assessment and taxation of all property according to its value in money, and prescribe such regulations as shall secure a just valuation for the taxation of all property, so that every person and corporation shall pay a tax in proportion to such value. By an amendment to § 4, Article XIII, adopted in 1918, it is provided that all metaliferous mines or mining claims, in addition to an arbitrary valuation of $5 per acre, shall be assessed " at a value based on some multiple or sub-multiple of the net annual proceeds thereof. All other mines or mining claims and other valuable mineral deposits, including lands containing coal or hydrocarbons, shall be assessed at their full value."

The legislature, at its session in 1919, enacted a statute in pursuance of this constitutional provision, providing that metaliferous mines or mining claims shall be assessed, in addition to the $5 per acre, upon a value to be determined by taking the multiple of three times the net annual proceeds thereof. Other mines and valuable mineral deposits are to be assessed at their full value. The words " net annual proceeds " are defined to be the net proceeds realized during the preceding calendar year from the sale, or conversion into money or its equivalent, of all ores extracted by the owner, lessee, contractor or other person working upon or operating the property during or previous to the year for which the assessment is made, including all dumps and tailings, after making certain deductions. Session Laws, 1919, c. 114, § 5864.

Upon the facts stated and under these constitutional and statutory provisions, the lower court upheld the validity of the tax.

The plaintiff contended in the court below that the tailings deposit was neither a mine nor a part of a mine, but a thing separate and apart from its mining claims, constituting a " valuable mineral deposit " and taxable as such upon the value and not a multiple thereof; that the agreement with the leasing company was a sale of the deposit, which thereupon ceased to be assessable as its property, or the basis for assessment of its worked out and worthless mine; that since 1914 its mining claims, having become valueless and yielding no net proceeds, were not taxable; that the tax assessed was therefore in contravention of § 3, Article XIII, of the Constitution of Utah, requiring a uniform and equal rate of assessment of property according to its value in money, so that every person and corporation should pay a tax in proportion to such value; and also was in contravention of the clauses of the Fourteenth Amendment to the Constitution of the United States in respect of due process and equal protection of the laws.   The court below denied these contentions and sustained the tax and the case comes here for review upon writ of error.

The defendant has submitted a motion to dismiss the writ of error and of this we first dispose.   The ground of the motion is that the case was tried by the court without a jury; that no exceptions were taken during the trial and no request for special findings or a declaration of law made during the progress of the trial; that the court gave its decision and a general finding orally and directed judgment for the defendant, which was duly entered; that nearly three months later, on motion of plaintiff, and against defendant's objection, the court made and filed special findings of fact.   The defendant challenges the power of the court to make these special findings and insists that they should be disregarded, in which event nothing substantial would be left for review.

All of the proceedings, including the special findings, happened at the same term.   The rule is that during the

term the record is "in the breast of the court" and may be altered during that time in its discretion as justice may require. *Goddard* v. *Ordway,* 101 U. S. 745, 752; *Ayres* v. *Wiswall,* 112 U. S. 187, 190; *Doss* v. *Tyack,* 14 How. 297, 312; *Barrell* v. *Tilton,* 119 U. S. 637, 643; *Basset* v. *United States,* 9 Wall. 38, 41.

That rule is applicable here and the motion to dismiss is accordingly denied.

The state constitution plainly contemplates that all property irrespective of its character, shall be taxed "according to its value in money." The provision with reference to the taxation of metaliferous mines does not mean to depart from this rule, but recognizes that their value cannot be determined in the ordinary way, since the ores which constitute the wealth of such property are hidden in the earth and, as a general thing, disclosure of their extent and character must await extraction. The constitution, therefore, provides, not for disregarding value in the assessment of taxes upon mines, but for arriving at it in a special manner—that is, by a measurement proportioned to the net annual proceeds derived from the property. The value of property bears a relation to the income which it affords. If it be property whose production is uniform and of indefinite duration the capitalization of the net income derived from it at the going rate of interest, in the absence of a more certain method, will furnish a reasonable measure of the value. The life of a mine, however, is limited. The extraction of ores from year to year constitutes a constant drain upon the capital, which, in course of time, will be exhausted. It follows that a given multiple of the net annual proceeds which may be a fair measure of value in the early part of a mine's development, will become excessive as the stage of exhaustion approaches. The constitutional provision, therefore, at best, will produce only approximate equality. Undoubtedly in fixing the multiple of

the net annual proceeds upon which the value of metaliferous mines is to be calculated a good deal of latitude must be allowed the legislature and the taxing authorities, but the power is not unbounded.    Without attempting to delimit the boundaries—a matter primarily for the state courts—it is sufficient for present purposes to say that in our opinion they have been clearly exceeded in the instant case.    The net proceeds here involved arose from a lot of refuse material, which, long prior to the imposition of the tax, had been severed from the mining claims, removed to a distance, submitted to the process of reduction and stored upon lands separate and apart from the claims.    Moreover, but one-tenth of the amount of these net proceeds was realized by the owner of the mining claims.    To treble the total of these proceeds for the purpose of basing thereon an altogether fictitious value for a mine worked out and worthless years before the adoption of the statutory provisions supposed to confer the authority to do so, results in such flagrant and palpable injustice as would cast the most serious doubt upon the constitutionality of such provisions if thus construed.    See *Dane* v. *Jackson,* 256 U. S. 589, 598; *Henderson Bridge Co.* v. *Henderson City,* 173 U. S. 592, 614–615.    These statutory provisions, so far as we are informed, have not received the consideration of the state courts, and we will not assume in advance of such consideration, that they will be so construed as to produce that result.    See *Plymouth Coal Co.* v. *Pennsylvania,* 232 U. S. 531, 546; *Missouri, Kansas & Texas Ry. Co.* v. *Cade,* 233 U. S. 642, 650.    Clearly they are susceptible of a construction which will preclude their application to the case now under consideration and, as that construction will resolve all doubt in favor of their constitutionality, it is our duty to adopt it.    *Plymouth Coal Co.* v. *Pennsylvania, supra,* p. 546; *St. Louis Southwestern Ry. Co.* v. *Arkansas,* 235 U. S.. 350, 369; *Arkansas Natural Gas Co.* v. *Arkansas Railroad Commission,* 261 U. S. 379.

The rule prescribed for the valuation of metaliferous mines, as we have already indicated, is one of necessity, and should not be extended to cases clearly not within the reason of the rule. The tailings, severed and removed from the mining claims, changed in character, placed on other and separate lands and having an ascertained and adjudicated value of their own, in our opinion, constituted a unit of property entirely apart from the mine from which they had been taken. See *Forbes* v. *Gracey,* 94 U. S. 762, 765. We think the agreement with the leasing company was not a sale of these tailings, but that the ownership, pending the process of reduction, remained in plaintiff. The plaintiff, therefore, was subject to taxation upon their value, but not as a mine, since that implies something capable of being mined which this loose and homogeneous deposit obviously was not.

While the taxing authorities cannot be held to an inflexible rule of equality, even in respect of properties in the same classification where their nature is such as to practically preclude the application of such a rule, it does not follow that all distinctions are to be ignored and indubitably dissimilar and readily distinguishable things treated as though they were the same. It may well be that the taxable value of mines differing in extent of development or in degree of exhaustion and relatively of different actual values, must, from the practical necessities of the case, be subjected to the same rule of measurement, although it may work inequality to some extent. But the difference between a mine from which ore is still being or still may be extracted and net income derived, and one conceded to be an empty shell, with no present or prospective value whatsoever, is so obvious that the imposition of a tax upon the basis of their being, nevertheless, one and the same cannot be sustained with due regard for either law or logic.

How far the state statute defining the net annual proceeds to be considered in measuring the value of a mine,

properly includes those derived from dumps and tailings placed and remaining upon the mining claims or connected with a going mine, we do not determine; but we do hold that the proceeds from the tailings in question, under the facts here disclosed, are not included within its terms. The court below should have so construed the statute and rendered judgment for the plaintiff. See *Reagan* v. *Farmers' Loan & Trust Co.*, 154 U. S. 362, 390–391; *Greene* v. *Louisville & Interurban R. R. Co.*, 244 U. S. 499, 507. This disposition of the case makes it unnecessary to adjudicate the questions raised under the Fourteenth Amendment.

The judgment of the District Court is reversed and the case remanded for further proceedings in conformity with this opinion.

*Reversed.*