## COMMONWEALTH CASUALTY CO. v. AICHNER.*

Circuit Court of Appeals, Eighth Circuit.
April 5, 1927.

No. 7525.

**1. Insurance ⬳452—Section of accident policy limiting liability to injuries occurring while traveling as passenger held not ambiguous.**

Section of accident insurance policy limiting liability thereunder to case where injuries were sustained while traveling as passenger within common carrier's public conveyance held not ambiguous.

**2. Insurance ⬳451(1)—Parties to contract may limit liability to certain accidents and risks.**

Parties to insurance contracts have right and power to contract for what accidents and risks company shall or shall not be liable.

**3. Insurance ⬳146(1)—Natural and obvious meaning of insurance contract should be preferred to curious hidden sense.**

The natural, obvious meaning of the provisions of an insurance contract should be preferred to any curious hidden sense, which nothing but the exigency of a hard case and ingenuity of a trained and acute mind would discover.

**4. Insurance ⬳146(3)—Courts will construe misleading policy, so as not to permit insurer to take advantage thereof.**

If insurance policy is so framed that its language is calculated to mislead, the courts lean to a construction that will not permit insurance company to take advantage thereof.

**5. Insurance ⬳452—Accident policy, prominently displaying limited liabilty, held not misleading, because limiting benefits of certain section.**

Accident policy, prominently displaying that it was a $10 or cheap policy, and paid only limited indemnity, held not misleading by reason of limiting benefits in certain section to cases arising from injuries received while traveling as a passenger within any common carrier's public passenger conveyance.

**6. Appeal and error ⬳230—Review may be had of denial of request for corrected finding and judgment on exception allowed after entry of judgment, but during same term.**

Where defendant, one week after entry of judgment for plaintiff, but during same term, requested certain finding and judgment, which was denied, and exception allowed thereto, court may review ruling thereon, since record during term may be altered, in discretion of court and as justice may require.

In Error to the District Court of the United States for the Eastern District of Missouri; Charles B. Faris, Judge.

Suit by Louisa C. Aichner against the Commonwealth Casualty Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

*Rehearing denied June 7, 1927.

Walter L. Roos, of St. Louis, Mo. (Thomas H. Cobbs, George B. Logan, Charlton A. Alexander, and James V. Dunbar, all of St. Louis, Mo., on the brief), for plaintiff in error.

Walter H. Saunders, of St. Louis, Mo. (John S. Leahy, Lambert E. Walther, Harold F. Hecker, and Lyon Anderson, all of St. Louis, Mo., on the brief), for defendant in error.

Before STONE and VAN VALKENBURGH, Circuit Judges, and TRIEBER, District Judge.

VAN VALKENBURGH, Circuit Judge. Defendant in error is the widow of one R. F. Aichner, who was drowned while swimming on August 10, 1924. June 16, 1924, plaintiff in error issued to the deceased the policy of insurance upon which this suit is founded. That policy, on its face, is called "Peerless Special Ten-Dollar Accident and Sickness Policy." In consideration of a premium payment of $10, plaintiff in error undertook to insure the husband of defendant in error for the term of one year "against the effects of bodily injuries caused directly, solely, and independently of all other causes by external, violent, and accidental means, which bodily injuries or their effects shall not be caused wholly or in part, directly or indirectly, by any disease, defect, or infirmity, and which shall from the date of the accident result in continuous disability and also against the effects of sickness, as follows:

"Section A. Accidents Benefits.

|  | Value First Year under Section A | Annual Increase under Section A | Value After Fifth Year under Section A |
|---|---|---|---|
| For loss of life.............. | $5,000.00 | $500.00 | $7,500.00 |
| For loss of both hands by complete severance at or above the wrists | 3,500.00 | 350.00 | 5,250.00 |
| For loss of both feet by complete severance at or above the ankles... | 3,500.00 | 350.00 | 5,250.00 |
| For loss of one hand and one foot by complete severance as defined above ................... | 3,500.00 | 350.00 | 5,250.00 |
| For loss of entire sight of both eyes, if irrecoverably lost.......... | 3,500.00 | 350.00 | 5,250.00 |
| For loss of either hand by complete severance at or above the wrist.. | 875.00 | 87.50 | 1,312.50 |
| For loss of either foot by complete severance at or above the ankle.. | 875.00 | 87.50 | 1,312.50 |
| For loss of entire sight of one eye, if irrecoverably lost ............. | 375.00 | 35.00 | 550.00 |

—resulting within thirty days from date of accident solely from such injuries, which shall have caused continuous total disability from date of accident to date of loss, but only when such injuries are sustained.

"WHILE TRAVELING as a passenger in a place regularly provided for passengers, within any common carrier's public passenger conveyance (animals, aerial machines, or conveyances excepted), but only when such injuries are sustained by reason of the wrecking of such conveyance."

Section B provides indemnity of $50 per week, not exceeding 10 consecutive weeks, for loss of time for injuries sustained in the same manner as provided in section A.

Section C provides indemnity of $25 per week, not exceeding 10 consecutive weeks, for loss of time from injuries sustained in the manner specified in said section C, which differs from that specified in sections A and B.

Section D provides indemnity for the fracture of any bone by accident in or out of business, except such as are covered under sections A, B, or C.

Section E provides hospital benefits resulting from injuries caused by any accident for which no other indemnity is provided by the policy.

Section F agrees to pay for loss of life from any accident not otherwise covered by the policy.

Section G deals with surgeon's fees; section H, with sickness benefits; section I, with emergency benefit, in case the insured is physically unable to communicate with friends.

Section J, under the heading "General Provisions," specifies persons and conditions, employments, etc., not covered by the policy.

Defendant in error brought suit to recover the principal sum of $5,000, being the first year value for loss of life specified under section A above quoted, together with interest and a penalty of $500 for alleged vexatious refusal to pay the said policy, and a reasonable attorney's fee, to be determined at the trial. Plaintiff in error denied liability under section A, and tendered payment of $100 under section F of the policy. A jury was waived in writing and the case was tried to the court upon an agreed statement of facts. Judgment was entered for defendant in error in the sum of $5,000, together with interest aggregating $445.75.

The view of the trial court is summed up in the following language: "I conclude, as a matter of law, that the policy, from some of its language, from its punctuation, and from the manner in which it is printed, is ambiguous, for that it is calculated to deceive those who buy it; that this ambiguity must be construed most strongly against the defendant, and, so considering it, the finding and judgment of the court should be for plaintiff."

The contention of plaintiff in error is that there is no ambiguity in the meaning of the policy, and therefore it is the duty of the court to apply its terms, regardless of whether it be favorable to the one side or the other; further, that where there is any question about punctuation the text or language of the policy must control. The basis of the charge of ambiguity lies entirely in the matter of punctuation. It is the contention of plaintiff in error that the accident benefits conferred by section A are limited and restricted to those sustained "while traveling as a passenger in a place regularly provided for passengers within any common carrier's public conveyance (animals, aerial machines, or conveyances excepted), but only when such injuries are sustained by reason of the wrecking of such conveyances." There is a period after the word "sustained" which precedes the clause just quoted, and it is the insistence of defendant in error, as sustained by the trial court, that section A, above that period, is and was intended to be complete in itself, and that the "while traveling" clause forms no part of and does not limit that section.

It is obvious that the use of the period after the word "sustained" is improper, if the clause beginning with the words "while traveling" is to be read as a part of and limiting the preceding part of the section. However, if this punctuation be disregarded, the section, as a whole, reads intelligently and with reasonable import. If the clauses be segregated in accordance with the contention of defendant in error, neither is complete in itself. The first is abortive, failing to specify the nature of the accident covered by the policy by which the injuries calling for benefits under section A are sustained; the latter becomes a rudderless adverbial modifier, with nothing left to modify. In the course of his memorandum opinion the learned trial judge said: "If, then, the language of section A, above quoted, is decisive, the contention of defendant must be upheld, because the meaning of defendant is clear, and there is no ambiguity to be found in the mere words used in the policy. So, if there be ambiguity, it arises, not from the words employed, but from the punctuation

and suggestive and misleading manner of printing section A, as it appears in the policy, and from other language used in the policy."

It is clear then that the alleged ambiguity must arise, if at all, from the punctuation, because, if the policy has been framed in a suggestive and misleading manner, an entirely different principle of law will be applied. If, as the trial court held, the meaning is clear, and there is no ambiguity to be found in the mere words used in the policy, a correct ruling, so far as punctuation plays a part, is clearly indicated, for punctuation alone cannot establish ambiguity. As said by Mr. Justice Blatchford in Joy v. St. Louis, 138 U. S. 1, 32, 11 S. Ct. 243, 251, 34 L. Ed. 843, "I know that the matter of punctuation is never relied upon to defeat the obvious intent; but, when the meaning is doubtful, the punctuation is certainly a matter tending to throw light upon it."

This court, in Holmes v. Phenix Ins. Co. (C. C. A. 8) 98 F. 240, 241, 47 L. R. A. 308, has laid down a rule which has found general acceptance. The case has frequently been cited with approval. We quote:

"But in a contract the words, and not the punctuation, are the controlling guide in its construction. Punctuation is no part of the English language. The Supreme Court say that it 'is a most fallible guide by which to interpret a writing.' Ewing's Lessee v. Burnet, 11 Pet. 41, 54, 9 L. Ed. 624. The Century Dictionary tells us, what is common knowledge, that 'there is still much uncertainty and arbitrariness in punctuation.' It is always subordinate to the text, and is never allowed to control its meaning. The court will take the contract by its four corners, and determine its meaning from its language, and, having ascertained from the arrangement of its words what its meaning is, will construe it accordingly, without regard to the punctuation marks, or the want of them. The sense of a contract is gathered from its words and their relation to each other, and, after that has been done, punctuation may be used to more readily point out the division in the sentences and parts of sentences. But the words control the punctuation marks, and not the punctuation marks the words. If there was not a punctuation mark in this whole clause, its meaning would be plain, and, whether a comma or a semicolon is placed between the two members of the sentence, the two members are there, separate and distinct, as a result of the obvious meaning of the words and their arrangement. The comma and the semicolon are both used

18 F.(2d)—56

for the same purpose, namely, to divide sentences and parts of sentences, the only difference being that the semicolon makes the division a little more pronounced than the comma; but at the last it is the sense of the words, taken together, that dictates where the punctuation marks are to be placed, and what they shall be."

In Ewing's Lessee v. Burnet, 11 Pet. 41, 9 L. Ed. 624, cited in the foregoing, the Supreme Court said: "Punctuation is a most fallible standard by which to interpret a writing; it may be resorted to, when all other means fail; but the court will first take the instrument by its four corners, in order to ascertain its true meaning; if that is apparent, on judicially inspecting it, the punctuation will not be suffered to change it."

An illuminating application of the rule is to be found in Small Co. v. American Sugar Refining Co., 267 U. S. 233, 45 S. Ct. 295, 69 L. Ed. 589. The alleged ambiguity clause under consideration was as follows: "Barrels or equivalent at price of 22½ cents, assortment to be furnished seller by buyer before September 1, 1920, but subject to such substitutions as seller may find necessary to make. In event assortment is not furnished prompt seller reserves right to ship such grades as it has available at the time of shipment."

It will be noted that a period separated the clause "in event assortment is not furnished prompt" from the language preceding it, and that it was separated by no punctuation from the language which followed it. Of this the Supreme Court said: "In any view, it is neither grammatically nor rightly punctuated. * * * The context and the sense of the whole provision indicate that the clause 'in event assortment is not furnished prompt' was intended to be a part of and to qualify what precedes it rather than what follows. If that was the meaning intended, a mistake in punctuation by the typist should not be permitted to defeat it."

Holmes v. Phenix Ins. Co., supra, is cited with approval in Zantow v. Old Line Accident Ins. Co., 104 Neb. 655, 178 N. W. 507, and Stoddart v. Golden, 179 Cal. 663, 178 P. 707, 3 A. L. R. 1060. In the latter case it is said: "Punctuation, at best a most fallible guide, is always subordinate to the text and is never allowed to control its meaning." Holmes v. Phenix Ins. Co. (C. C. A.) 98 F. 240, 241, 47 L. R. A. 308. "A principle of construction well settled is that, where one construction would make a contract unusual

and extraordinary, and another construction, equally consistent with the language employed, would make it reasonable, fair, and just, the latter construction must prevail."

[1] In our judgment, the section of the policy upon which reliance is placed is not ambiguous, and its meaning accords with that for which plaintiff in error contends.

But counsel for defendant in error, to meet this contingency, argue that, though the "while traveling" clause be separated from what precedes, section A is complete in itself and sustains the recovery claimed. They call attention to the provisions with respect to the loss of entire sight of one or both eyes "resulting within thirty days from date of accident solely from such injuries, which shall have caused continuous total disability from date of accident to date of loss," and insist that the following words, "but only when such injuries are sustained," mean the ultimate establishment of entire loss of sight, which may not be known for some time, limited to 30 days, following the accident. This argument is ingenious, but not convincing. As said by Judge Sanborn, speaking for this court, in Hawkeye Commercial Men's Association v. Christy (C. C. A.) 294 F. 208, 40 A. L. R. 46:

[2, 3] "Parties to insurance contracts have the right and power to contract for what accidents and risks the company shall and for what accidents and risks they shall not be liable and the courts may not make new or different contracts for them. * * * The natural, obvious meaning of the provisions of a contract should be preferred to any curious, hidden sense which nothing but the exigency of a hard case and the ingenuity of a trained and acute mind would discover."

[4] We have now to consider whether the policy is so framed that its language is calculated to mislead; if so, the courts lean to a construction that will not permit the insurance company to take advantage thereof. St. Paul Fire & Marine Ins. Co. v. Ruddy (C. C. A. 8), 299 F. 189; First National Bank v. Hartford Fire Ins. Co., 95 U. S. 673, 24 L. Ed. 563; Moulor v. Insurance Co., 111 U. S. 335, 4 S. Ct. 466, 28 L. Ed. 447; Travelers' Ins. Co. v. McConkey, 127 U. S. 661, 8 S. Ct. 1360, 32 L. Ed. 308.

[5] A careful reading of the policy and analysis of its terms convince us that such criticism is not justified. Upon the face of the policy it appears prominently displayed in large type that it is but a "Ten Dollar" or cheap policy; that it pays limited indemnity for loss of life, personal injuries, loss of time by accidental means, and sickness, to the extent therein provided. Section A pays for loss of life the large amount of $5,000 during the first year, and $7,500 after the fifth year for one form of injury; that is to say, while traveling as a passenger in a common carrier's public passenger conveyance, and then only when such injuries are sustained because of wrecking of such conveyance. It pays proportionate amounts for major personal injuries due to the same cause. Section B pays $50 per week for loss of time due to the same cause. Section C pays $25 per week for loss of time for injuries resulting from other causes. Section F makes it clear that the provisions of section A do not apply to death from all causes by providing an indemnity of $100 for loss of life in any accident "not otherwise covered by this policy."

Clause 11 of section J provides that the policy does not cover "injuries, fatal or nonfatal, except drowning, of which there shall be visible mark or contusion on exterior of the body at the place of injury, the body itself in case of death not to be deemed such." This plainly does not enlarge liability for drowning as a specific cause of death. It merely excludes it from those injuries which require a visible mark on the exterior of the body as evidence of the cause of death, because drowning would naturally not leave such a mark. This, in our judgment, is the only significance of this section and clause of the policy. The words "while traveling," which introduce the clause of limitation to loss of life sustained by reason of the wrecking of a common carrier's public passenger conveyance, are in large type, calculated to catch the eye, and the clause is placed precisely where it should be to modify the language which precedes it. The language of that section, if read without too scrupulous regard for punctuation, is clear and unambiguous. The various sections of the policy are clearly separate and distinct. In addition to the indemnities provided for loss of life and serious personal injuries, many benefits for loss of time, for hospital benefits and surgeon's fees, and for sickness are provided. Altogether, the policy cannot be regarded as illiberal for the small premium paid. But, be that as it may, as said in Hawkeye Commercial Men's Association v. Christy, supra, the parties had "the right and power to contract for what accidents and risks the company shall and for what accidents and risks they shall not be liable, and the courts may not make new or different contracts for them."

This policy, throughout, upon its face, and we have nothing else to go by, calls attention sharply to the fact that it pays limited indemnity under varying conditions, clearly and distinctly specified. We feel that the average reader would have no difficulty in arriving at its meaning, if read with the ordinary care which the law requires. Upon this subject Mr. Greenleaf (volume 1, par. 298) makes this observation: "Words cannot be said to be ambiguous because they are unintelligible to a man who cannot read; nor is a written instrument ambiguous or uncertain merely because an ignorant or uninformed person may be unable to interpret it. It is ambiguous only when found to be of uncertain meaning by persons of competent skill and information."

Thus viewed, the policy is neither ambiguous nor calculated to deceive. It may safely be said that if a comma, semicolon, colon, or no punctuation at all had appeared after the word "sustained" and before the words "while traveling," the claim of ambiguity in or liability under section A would never have occurred to any one. The entire controversy arises over a matter of uncertain and inexact punctuation. This alone cannot be suffered to change the true and apparent meaning of an instrument.

[6] One week after judgment had been entered, but during the same term, plaintiff in error requested the court to declare the law to be that, upon the written, agreed, and uncontradicted statement of facts, and under the contract of insurance, the plaintiff was entitled to a finding and judgment in her favor and against the defendant for $100, and no more. The court received the request, denied it, and allowed an exception to the ruling. Defendant in error insists that the request, not being made during the progress of the case, comes too late, and that there is nothing which this court can review on error.

The Supreme Court in South Utah Mines & Smelters v. Beaver County, 262 U. S. 325, 43 S. Ct. 577, 67 L. Ed. 1004, had this to say of a similar situation: "The rule is that, during the term, the record is 'in the breast of the court,' and may be altered during that time in its discretion, as justice may require."

The motion to dismiss was accordingly denied. It follows from what has been said that the judgment below must be reversed, and the cause remanded for further proceedings in accordance with this opinion.

It is so ordered.