## ASSOCIATED MFRS. CORPORATION OF AMERICA v. DE JONG.

### No. 9398.

Circuit Court of Appeals, Eighth Circuit.
Feb. 23, 1933.

B. F. Swisher, of Waterloo, Iowa, for appellant.

Gerrit Klay, of Orange City, Iowa, for appellee.

Before STONE, VAN VALKEN-BURGH, and BOOTH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

Appellant is a Delaware corporation engaged in the business of manufacturing cream separators, engines, etc., in the state of Iowa. It was organized June 10, 1929, through a consolidation of two Iowa corporations whose assets it purchased and whose liabilities it assumed. It issued, at the time of its organization, 100,000 shares of Class A stock and 100,000 shares of Class B stock. Class A stock was preferred over Class B stock to the extent of $12.50 per share upon liquidation, and up to $1 per share with respect to dividends. In payment of the purchase price it issued to the consolidated companies all of its Class B stock at $10 per share ($1,000,000) and 6,456 shares of its Class A stock at $12.50 per share ($80,700).

No cash was received for this block of Class A stock. The president of appellant testifies that these shares were not issued in compensation for the assets purchased, but in exchange for the preferred stock of the old companies. Appellant proposed to sell 50,000 shares of Class A stock, less the 6,456 shares already issued as above stated, and made application under the Iowa Securities Act for permission so to do. This act is found in chapter 10 of the 43rd General Assembly of Iowa. Sections 7, 11, 17, 20, and 22 of this act (sections 8581-c7, 8581-c11, 8581-c18, 8581-c21, and 8581-c23, Iowa Code 1931) contain the following provisions:

Sec. 8581-c7. *"Registration by Notification.* The following classes of securities shall be entitled to registration by notification in the manner provided in this section:

"1. Securities issued by a corporation, partnership, association, company, syndicate or trust owning a property, business or industry which has been in continuous operation not less than three years and which has shown during a period of not less than two years or more than ten years next prior to the close of its last fiscal year preceding the offering of such securities, average annual net earnings, after deducting all prior charges not including the charges upon securities to be retired out of the proceeds of sale, as follows: * * *

"b. In the case of preferred stock, not less than one and one-half times the annual dividend requirements on such preferred stock and on all other outstanding stock of equal rank and assets at least equal to one hundred twenty-five per centum of the par value of the aggregate amount of such preferred stock and all other outstanding preferred stock of equal rank, after the deduction from such assets of all indebtedness, which will be existing, and all stock of senior rank which will be outstanding after the application of the proceeds of the preferred stock offered for sale. * *

"7. ⁓ * * Securities entitled to registration by notification shall be registered by the filing by the issuer or by any registered dealer interested in the sale thereof in the office of the secretary of state of a statement with respect to such securities containing the following:

"a. Name of issuer, location, and, if incorporated, place of incorporation.

"b. A brief description of the security including amount of the issue.

"c. Amount of securities to be offered in the state.

"d. A brief statement of the facts which show that the security falls within one of the classes in this section defined.

"e. The price at which the securities are to be offered for sale.

"In the case of securities falling within the class defined by subsections one or two, if the circular to be used for the public offering is not filed with the statement, then a copy of such circular shall be filed in the office of the secretary of state within two days thereafter or within such further time as the secretary of state shall allow. * * *

"The secretary of state shall, for a period of twenty-four hours exclusive of Sundays, and legal holidays, only from and after the receipt of any such notification accompanied by proper fee as in this section provided, have the same powers on such notifications as it has on applications for registration by qualification and the same powers to deny the registration or to register the securities. Failure of the secretary of state to take any formal action on a notification within said period of twenty-four hours exclusive of Sundays and legal holidays shall constitute a registration, subject to the terms of the notification, for those in whose behalf the notification was given."

Sec. 8581-c11. *"Registration of Dealers and Salesmen.* No dealer or salesman shall engage in business in this state as such dealer or salesman or sell any securities including securities exempted in section 8581-c4 [4 of this Act], except in transactions exempt under section 8581-c5 [5 of this Act], unless he has been registered as a dealer or salesman in the office of the secretary of state pursuant to the provisions of this section.

"An application for registration in writing shall be filed in the office of the secretary of state in such form as the secretary of state may prescribe, duly verified by oath, which shall state the principal office of the applicant, wherever situated, and the location of the principal office and all branch offices in this state, if any, the name or style of doing business, the names, residence and business addresses of all persons interested in the business as principals, copartners, officers and directors, specifying as to each his capacity and title, the general plan and character of business and the length of time the dealer has been engaged in business. * * *

"If the secretary of state shall find that the applicant is of good repute and has complied with the provisions of this section including the payment of the fee hereinafter provided he shall register such applicant as

a dealer upon his filing a bond as in section 8581-c14 [13a of this Act] provided.

"Upon the written application of a registered dealer and general satisfactory showing as to good character and the payment of the proper fee the secretary of state shall register as salesmen of such dealer such natural persons as the dealer may request."

Sec. 8581-c18. *"Remedies.* Every sale or contract for sale made in violation of any of the provisions of this chapter shall be voidable at the election of the purchaser and the person making such sale or contract for sale and every director, officer or agent of or for such seller who shall have personally participated in making such sales and at the time knew of such violations shall be jointly and severally liable to such purchaser in an action at law in any court of competent jurisdiction upon tender to the seller in person or in open court of the securities sold or of the contract made for the full amount paid by such purchaser, together with all taxable court costs and reasonable attorney's fees in any action or tender under this section; provided, that no action shall be brought for the recovery of the purchase price after two years from the date of such sale or contract for sale; and provided further, that no purchaser otherwise entitled shall claim or have the benefit of this section who shall have refused or failed within thirty days from the date thereof to accept an offer in writing of the seller to take back the security in question and to refund the full amount paid by such purchaser, together with interest on such amount for the period from the date of payment by such purchaser down to the date of repayment, such interest to be computed:

"a. In case such securities consist of interest bearing obligations at the same rate as provided in such obligations; and

"b. In case such securities consist of other than interest bearing obligations at the rate of six per cent per annum; less, in every case, the amount of any income from said securities that may have been received by such purchaser."

Sec. 8581-c21. "Any * * * corporation subject to the provisions of this chapter, that * * * shall make to the secretary of state, his superintendent, agent or representative any false or fraudulent statement concerning the proposed plan of business to be transacted, or the nature, value or character of securities to be sold in this state, or * * * any false statement as to the financial condition of such * * * corporation shall be deemed guilty of a felony. * * * "

Sec. 8581-c23. "Any * * * corporation, * * * whether subject to the provisions of this chapter or otherwise, that sells, offers for sale or negotiates for the sale of any securities within this state, and knowingly makes any false representations or statements as to the nature, character or value of such security, or the amount of the earning power of such security whether in the nature of interest, dividends or otherwise, or knowingly makes any other false or fraudulent representation to any person for the purpose of inducing said person to purchase said security or conceals any material fact in the advertisement or prospectus of such security for the purpose of defrauding the purchaser, or knowingly violates any of the provisions of this chapter with intent to defraud, shall be deemed guilty of a felony."

October 10, 1929, appellant sold to appellee eighty shares of its Class A stock for which appellee paid the sum of $1,000 and received a stock certificate therefor. October 12, 1929, appellant sold to appellee an additional eighty shares of its Class A stock, for which appellee paid the sum of $1,000 and received a certificate of stock therefor. March 15, 1930, appellant sold to appellee two hundred and forty shares of its Class A stock for $3,000, upon which purchase price appellee at the time paid $1,200 and received a certificate of purchase receipt. To effect these and other sales appellant issued three certain prospectuses entitled "Thirty Years of National and International Achievement," "New Issue 50,000 Shares Associated Corporation of America (a Delaware Corporation) Class A Stock," and "Why Class A Shares of Associated Corporation of America Present an Unusual Investment Opportunity."

Appellee brought an action at law in the District Court of Sioux county, Iowa, to void said sales and recover the amounts paid thereunder. November 7, 1930, the case was removed to the United States District Court for the Northern District of Iowa. A jury was waived by written stipulation. Issues were framed and a trial to the court followed. At the close of the evidence appellant moved that appellee be required to elect "whether this cause is being prosecuted by the plaintiff as a law action for violation of the Iowa Securities Act, or whether as an action for rescission and recovery back of the money paid for the purchase of the stock."

The court ruled that the action was brought as an action at law under the Iowa Securities Act. Thereupon appellant moved the court as follows: "Comes now the de-

fendant and moves the court to dismiss this action at plaintiff's costs on the ground and for the reason that the plaintiff has failed to establish by competent proof any violations by this defendant of any of the provisions of the Iowa Securities Act."

Thereafter, June 30, 1931, the court overruled the motion to dismiss and entered judgment for appellee in the sum of $3,200, costs taxed at $446.15, and an attorney's fee in the sum of $72 July 3, 1931, and at the same term, appellee filed a motion, termed "an application for retaxation of costs," in which it asked an increase in the attorney's fee awarded. After hearing, this fee was increased to $300, and the judgment amended accordingly. The specifications of error charge that plaintiff-appellee failed to prove any of the allegations of fraud or concealment pleaded, and that the retaxation of the attorney's fee was improvident and unauthorized. In the progress of the trial appellant asked no findings of fact nor conclusions of law, nor sought the ruling of the court upon any proposition of law or fact other than by its motion to dismiss on the ground of failure of proof. Consequently upon this issue we inquire only whether there was substantial evidence to support the judgment entered.

The amended and substituted petition contains twenty-seven paragraphs. Those from seven to twenty-six inclusive contain allegations of violation of the provisions of the Iowa Securities Act. Those sought to be proved may be summarized as falling within the following classes:

1. The making of false representations to plaintiff and the concealment of material facts from her.

2. The making of false statements to the secretary of state.

3. The failure to file the circulars proposed to be used for the public offering.

4. The failure of Austin, a purported agent, to have a permit to sell stock at the time he sold appellee 240 shares of Class A stock.

The first two classes are evidently founded upon sections 8581-c21 and 8581-c23, hereinabove quoted. These two sections are criminal in their nature and contain within themselves no express provision for voiding a sale by reason of the conduct therein denounced. However, every sale or contract of sale made in violation of any of the provisions of the act is made voidable, at the election of the purchaser, by the terms of section 8581-c18 of the Code, and provision is made for an action at law in any court of competent jurisdiction to recover the full amount paid by the purchaser, together with costs and a reasonable attorney's fee. Undoubtedly, false representations and statements made to the secretary of state and his subordinates, or to induce the purchase of securities thus offered for sale, are within contemplation of the provisions of this act. The case was apparently tried upon that theory and is so submitted to this court upon the briefs and arguments of counsel.

Circulars designated as Exhibits D, E, and F are the so-called prospectuses which appellant failed to file with the secretary of state with its application for registration, or within two days thereof, as by the Securities Act provided. In these circulars it was represented that appellant had on hand, as of April 30, 1929, cash in the sum of $53,557.-16, whereas the balance sheet contained in another Exhibit (L), shows that the amount of cash on hand was but $3,557.16; that the liabilities of the company aggregated $133,-341.91, whereas they did in fact total $545,-996.91. The value of appellant's land, buildings, and equipment was placed at $1,385,-962.52, an appreciation of $778,816.17 over the amounts at which these items were carried on the books of the original companies before the merger. The basis of this appreciation is explained by appellant only by the statement of its accountant that he accepted the "Sound Value" furnished by a firm of appraisers. The deficit of the old companies aggregated $645,747.44. By the appreciation of the assets, to which reference has been made, this deficit was converted into an alleged surplus of $44,470.51. It was represented by one prospectus, and so stated by salesman Austin to appellee, that there were $46 of assets back of each Class A share, and, in another, that the net assets of the corporation were $1,173,240.24, or at the rate of $23.46 per share of Class A stock presently to be outstanding thereafter, and to be offered for sale at $12.50 per share. In view of the financial condition of the old companies whose physical assets formed the basis of this computation, it would seem that these statements of book and balance-sheet values were greatly exaggerated. In one prospectus, designated in the record as Exhibit F, it was stated that "there are no bonds, no mortgages, no preferred stock nor other form of prior obligations ahead of these Class A shares." Appellant had assumed all the liabilities, of the two merged companies, of which $100,000 was owed to officers and directors of the appellant corporation. It is claimed by appellant that in this statement

in the prospectus, "other form of prior obligations" meant those of the same nature as bonds, mortgages, preferred stock, etc., of which there were none outstanding. It is doubtful whether this was the meaning conveyed and intended to be conveyed to the prospective purchasers.

In one prospectus the purpose of the new issue is thus stated: "Immediate development and expansion and the reduction of outstanding direct obligations. Contracts are now being made to include the manufacture and construction of air craft."

Counsel for appellee points out that the money raised from the stock sale was all used for the payment of indebtedness, and that none was used for development and expansion. In this connection it is, perhaps, significant that the liabilities of the old companies, assumed by appellant, are shown to be $545,996.91, and that the gross proceeds from the proposed sale of the 43,544 shares of Class A stock, at $12.50 per share, would be $544,300.00.

The circulars marked Exhibits D, E, and F were not filed with the application in the office of the secretary of state as required, nor at any later time. These circulars, or prospectuses, were used for the public offering, as testified by appellee. The purported offering circular which was filed is designated in the record as Exhibit M. It contains some of the matter presented in Exhibits D, E, and F, but differs from them in very substantial particulars. It is conceded that Austin, at the time he sold the 240 shares of stock to appellee, was not a registered salesman as required by section 11 of the act (Code 1931, § 8581-c11). A number of other specifications of violation of the provisions of the Securities Act are urged by counsel for appellee, but their consideration would lead to unnecessary expansion of this opinion.

To all the matters presented by the petition appellant has interposed a vigorous defense by way of explanation, traverse, and avoidance. It claims that its representations were justified, and that the state officers were furnished with all the information contemplated by the act as a condition precedent to registration. We have given its contentions thoughtful consideration, but we are convinced that the chancellor, who had all the witnesses before him, and was in a position better to judge the merits of the controversy, is supported by substantial evidence in the conclusion reached.

It remains to consider appellant's assignment that: "The judgment entered on June 30, 1931 awarded to the plaintiff a judgment for $72.00 as reasonable attorney's fees and said judgment was final and the court was without jurisdiction to change or modify said judgment."

Appellant cites Young v. Rutherford, 190 Iowa, 414, 176 N. W. 241, to the effect that, in fixing the amount of attorney's fees, the court exercises a judicial function; that the allowance made becomes a part of the judgment, and that its reconsideration is not the function of a motion to retax costs; that such a remedy is not available, but relief must be sought by appeal. That attorney's fees, directed or permitted by state statutes, are not costs in the ordinary sense, but are to be allowed by inclusion in the judgments, is the rule in federal courts. People of Sioux County, Nebraska, v. National Surety Company, 276 U. S. 238, 48 S. Ct. 239, 72 L. Ed. 547. However, the provisions in state statutes that such fees shall be taxed as costs do not prevent enforcement of such provisions in federal courts by inclusion as part of the judgment. Business Men's Assurance Co. v. Campbell (C. C. A. 8) 18 F.(2d) 223. Compare Pond v. Goldstein (C. C. A. 9) 41 F.(2d) 76. And in the national courts it is uniformly held that all judgments, however conclusive in character, are under the control of the court pronouncing them during the term at which they are rendered, and may then be set aside, vacated, modified, or annulled by that court. South Utah Mines & Smelters v. Beaver County, 262 U. S. 325, 43 S. Ct. 577, 67 L. Ed. 1004; Commonwealth Casualty Co. v. Aichner (C. C. A. 8) 18 F. (2d) 879; McCandless v. Haskins et al. (C. C. A. 8) 28 F.(2d) 693.

The power and practice of the federal courts are not confined to those of the state courts in matters relating to review or modification of their judgments. Cudahy Packing Company v. City of Omaha (C. C. A. 8) 24 F.(2d) 3. The application for review of the award of attorney's fees, although somewhat informally, or perhaps, irregularly, brought to the attention of the trial court by motion to retax costs, was nevertheless duly entertained, heard, and considered. That court was not required to hear evidence as to the reasonable amount of such fees; and, in the absence of an affirmative showing to the contrary, will be presumed to have made a proper allowance. Hurni v. Sioux City Stock Yards Company, 138 Iowa, 475, 114 N. W. 1074. We think, therefore, that the modified award of attorney's fees should be sustained. In view, however, of the fact that

the Iowa Securities Act does not seem to have been construed by courts of last resort, we do not feel that this appeal is so wanting in good faith as to warrant an award of attorney's fees in this court, even if otherwise allowable. It follows from the foregoing that the judgment below should be affirmed and it is so ordered.