S. Elaine HOWARD, et al.,
Plaintiffs–Appellants,

v.

The CITY OF GARLAND,
Defendant–Appellee.

No. 90–1020
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Nov. 23, 1990.

Michael M. Daniel, Dallas, Tex., for plaintiffs-appellants.

Charles M. Hinton, City Atty., Brad Neighbor, First Asst. City Atty., Garland, Tex., for defendant-appellee.

Before KING, GARWOOD and DUHÉ, Circuit Judges.

GARWOOD, Circuit Judge:

Plaintiffs-appellants S. Elaine Howard (Howard), Alecia Spillman (Spillman) and Joy Wachendorfer (Wachendorfer) (collectively appellants) appeal the summary judgment dismissal of their 42 U.S.C. § 1983 claim challenging the constitutionality of a zoning ordinance of defendant-appellee the City of Garland (the city) prohibiting in residential districts the operation of a commercial day-care facility for more than four nonresident children without a special use permit. Because appellants have failed to demonstrate that the ordinance is not rationally related to a legitimate governmental interest, or that there is any genuine issue of material fact in that respect, we affirm.

**Facts and Proceedings Below**

Howard and Spillman (collectively operators) operated a home day-care facility in their residence in Garland, Texas. Wachendorfer's child received day-care at the Howard/Spillman home. Operation of the facility was Howard and Spillman's primary occupation. The operators charged a fee for each nonresident child enrolled, and provided day care, Monday through Friday, 7:30 a.m. to 6:00 p.m., for up to twelve (including three resident) children (none as old as fourteen) at the home.

The residence is located within a single family zoned area of a Texas home-rule municipality. Zoning in the municipality is governed by a comprehensive land-use ordinance, adopted by the city council, which in various areas allows certain uses and excludes others. The zoning ordinance imposes no restrictions on any home day care for up to four nonresident children in the area where the Howard/Spillman residence is located. However, if commercial day-care providers wish to care for more than four nonresident children in a residential district, the zoning ordinance provides that

they must obtain a special use permit and comply with certain performance standards such as state licensing, screening, off-street parking, and improved off-street loading. The zoning ordinance's restrictions are intended to limit negative externalities such as increased non-local traffic that would be produced by such a home day-care facility. These restrictions long antedated operators' interest in the residence and their operation of the day-care facility there.

Operators requested a special use permit for their facility. A hearing on their application was held before the city's Plan Commission, which recommended denial, as did the Planning Department staff. The city council thereafter denied operators' request. The city then ordered operators to cease commercial child care for more than four nonresidents at that location and appellants filed a complaint in district court requesting a temporary restraining order and preliminary injunction against the city's enforcement of the zoning ordinance. The court denied both motions. Thereafter operators opened a commercial day-care facility at another location in the city where they rented the space.

The city moved for summary judgment that the zoning ordinance was constitutional. The district court granted the motion and dismissed appellants' complaint with prejudice. Appellants timely appealed.

### Discussion

Appellants claim that the city's zoning ordinance violates their Fourteenth Amendment right to equal protection of the laws. Appellants dispute neither the nature of the regulatory classification nor the legitimacy of the city's regulatory purpose, the first two elements of an equal protection challenge. Appellants focus instead on the third element: "the 'fit' between the classification and the purpose; that is, whether the state could rationally determine that by distinguishing among persons as it has, the state could accomplish its legitimate purpose." [1] *Mahone v. Addicks Utility Dist. of Harris County*, 836 F.2d 921, 933 (5th Cir.1988). The sole issue raised by this appeal, therefore, is whether the zoning ordinance's regulation bears "a debatably rational relationship" to the city's concededly legitimate interests. *Reid v. Rolling Fork Pub. Utility Dist.*, 854 F.2d 751, 753 (5th Cir.1988).

Appellants argue that commercial home day care for more than four nonresident children does not interfere with municipal interests any more than do a number of other permitted business activities. Such permitted businesses include public and private schools, home instruction, home occupations, farms, ranches, orchards, gardening, livestock grazing, farm buildings, cemeteries and churches. Appellants claim that all of these activities create noise, increase traffic, or constitute commercial intrusion, yet they require no special use permit.

Appellants rely principally on *Cleburne v. Cleburne Living Center*, 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985), in support of their claim. In *Cleburne*, a Texas city denied a special use permit for the operation of a group home for the mentally retarded, acting pursuant to a municipal zoning ordinance requiring permits for such homes. The group home, Cleburne Living Center, was intended to house thirteen retarded men and women. The city council classified the home as subject to the same zoning regulations as a "'hospital for the feebleminded.'" *Cleburne*, 105 S.Ct. at 3252. The classification was not based on the number of occupants, but solely on their status as mentally retarded.

The Living Center filed suit claiming, *inter alia*, that the ordinance was invalid on its face and as applied because it discriminated against mentally retarded persons in violation of their constitutional

---

1. This general rule does not apply to certain suspect classifications or when the classification impinges on personal rights protected by the Constitution. *Mahone*, 836 F.2d at 933 n. 12 (citing *Cleburne v. Cleburne Living Center*, 473 U.S. 432, 105 S.Ct. 3249, 3255, 87 L.Ed.2d 313 (1985)). It is not claimed, nor does it appear, that any of these exceptions to the general rule is applicable here.

rights, as potential residents, under the equal protection clause. The Court observed that "some objectives—such as 'a bare ... desire to harm a politically unpopular group' [citation omitted]—are not legitimate state interests." *Id.* at 3258.[2] It noted that the city of Cleburne had failed to distinguish the Living Center from other housing arrangements unrestricted as to the number of persons who could freely occupy the identical structure without a permit, such as boarding houses, dormitories, fraternity houses, and nursing homes. *Id.* at 3259. *See also id.* at 3258, 3260. The Court ultimately held that the denial of the permit to the Living Center was based on "an irrational prejudice against the mentally retarded...." *Id.* at 3260.[3]

Appellants' reliance on *Cleburne* is misplaced. In *Cleburne*, the Supreme Court held that the zoning ordinance violated plaintiff's constitutional rights on an as-applied basis; the Court's ruling was limited to the city's denial of plaintiff's request for a special use permit. The Court noted that "[t]his is the preferred course of adjudication since it enables courts to avoid making unnecessarily broad constitutional judgments." *Id.* at 3258. In the case at bar, ruling in favor of appellants' challenge of the zoning ordinance as facially invalid under the Fourteenth Amendment would require exactly such a broad constitutional judgment.

Plaintiff in *Cleburne* demonstrated that the city council's denial of the special use permit was based on irrational prejudice against the class of persons to occupy the residence. Appellants in the instant case make no claim that the city was motivated by irrational prejudice toward home day care or the children served thereby, nor is there any evidence of any such prejudice. Indeed, we note that home day care is widely allowed—appellants assert there are some 250 home day care operations in Garland—and the ordinance requires a special use permit for day care only where more

than four nonresident children are served and then only if a fee is charged and the operation is in a residentially zoned area.

Finally, plaintiff in *Cleburne* demonstrated that similar persons were not being treated alike. The municipality allowed a wide range of home uses to go unregulated that were different from the use of the Living Center only because of the identity of its potential occupants. The uses cited by appellants in the instant case are either dissimilar to home day care or regulated to approximately the same degree for substantially the same purposes.

Home instruction, for example, is subject to the same four-person limit as is commercial home day care. Home occupations (without nonfamily employees, sales, or signs) are allowable only if, *inter alia*, they do not increase traffic or noise. Farms, ranches, orchards, livestock grazing, and farm buildings do not raise the same traffic concerns raised by home day care for five or more nonresidents. Nor does the high occupancy of a cemetery. Churches are not commercial and are required to alleviate traffic concerns by providing a minimum of one parking space per four auditorium seats. And the city council might reasonably assume that the norm is not for there to be daily meetings at churches.

Appellants concede that state law prohibits municipal interference with the location of public schools, and private schools are allowed without a special use permit only if they are accredited in accordance with standards of the Texas Education Agency. Nonaccredited private schools and commercial schools must obtain a special use permit. The city's distinction between accredited and nonaccredited private schools suggests that the city believes that the value of accredited private schooling outweighs the attendant negative externalities, whereas the value of nonaccredited private

---

2. *See also id.* 105 S.Ct. at 3262 (Stevens, J., concurring) ("through ignorance and prejudice the mentally retarded 'have been subjected to a history of unfair and often grotesque mistreatment'").

3. *See also id.* at 3262 (Stevens, J., concurring) ("The record convinces me that this permit was required because of the irrational fears of the neighboring property owners").

schooling, commercial schooling, and commercial day care does not. And, accreditation standards require schools to be "well designed for instruction" and "free from safety and health hazards." Tex. Admin. Code, Title 19, § 97.30. The city might also reasonably assume that accredited private schools will be far less likely to proliferate, a possibility buttressed by appellants' statement that there are approximately 250 home day care operations in Garland.

In any case, if the regulation at issue is rationally related to the city's purpose, the regulation or nonregulation of marginally similar nonresidential uses, such as accredited private schools, is not dispositive of the relevant constitutional question. A "legislature is allowed to attack a perceived problem piecemeal.... Under-inclusivity alone is not sufficient to state an equal protection claim." *Jackson Court Condominiums v. City of New Orleans*, 874 F.2d 1070, 1079 (5th Cir.1989) (citation omitted); *See City of New Orleans v. Dukes*, 427 U.S. 297, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511 (1976) ("Legislatures may implement their program step by step....").

We shall generally "defer[ ] to legislative determinations as to the desirability of particular statutory discriminations", for "[s]tates are accorded wide latitude in the regulation of their local economies under their police powers, and rational distinctions may be made with substantially less than mathematical exactitude.... [I]n the local economic sphere, it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment." *Dukes*, 96 S.Ct. at 2516–17 (citations omitted). Appellants present no evidence that the specific requirements of the zoning ordinance for the special use permit are irrational, arbitrary, or driven by invidious discrimination.

Under Rule 56(c) of the Federal Rules of Civil Procedure, a motion for summary judgment shall be granted when the movant shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Assuming opportunity to discover all relevant information, the burden is on nonmovant to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Appellants in the instant case fail to raise any genuine issue of material fact. Indeed, their brief in this Court asserts that "[t]here is no dispute about the facts of the case." Summary judgment disposition was clearly proper.

#### Conclusion

Appellants have not shown that the zoning ordinance, in requiring a special use permit for commercial home day care serving more than four nonresident children at one location in a residential district, had no debatably rational relationship to a legitimate governmental interest. Accordingly, the judgment in favor of the city is

AFFIRMED.