RHESA HAWKINS BARKSDALE, Circuit Judge:
For this challenge tó a Federal Rule of Civil Procedure 12(b)(6) (failure to state a claim) dismissal, upholding Texas’ Anti-Surcharge Law, Tex. Fin.Code § 339.001, at issue is whether the law’s proscribing merchants’ imposing surcharges for credit-card purchases constitutes a First Amendment violation. In contending the law violates free-speech rights, a group of Texas *76 merchants claim the law: penalizes them for characterizing pricing as a “surcharge”, while at the same time not prohibiting a “discount” for non-credit-card transactions; and is unconstitutionally vague. The Texas Office of Consumer Credit Commissioner counters the law is instead a permissible economic-pricing regulation that does not implicate the First Amendment. AFFIRMED.
I.
Texas’ law forbids merchants from charging an extra fee to consumers who pay with a credit card. It was enacted to address how the “swipe fee” of two to three percent of the purchase price, which credit-card issuers charge merchants for each transaction paid with a credit card, is passed on from the merchant to the consumer.
There is a substantial federal-law backdrop to the challenged Texas law. For over a decade prior to its enactment, Congress had been regulating surcharges and discounts related to credit cards. In 1974, Congress amended the Truth in Lending Act to prohibit credit-card companies from contracting against discounts for non-credit-card transactions. Fair Credit Billing Act, Pub.L. No. 93-495, tit. III, § 306, 88 Stat. 1500, 1515 (1974) (codified at 15 U.S.C. § 1666f(a)) (“the card issuer may not, by contract, or otherwise, prohibit any ... seller from offering a discount to a cardholder to induce the cardholder to pay by cash, check, or similar means rather than use a credit card”).
Before the amendment, credit-card companies’ contracts with merchants regularly prohibited their either offering discounts for non-credit-card transactions, or imposing surcharges for crediLcard transactions. The merchants and credit-card companies contracted to offer the same price for an item for all consumers, regardless of the manner in which they paid, and despite the “swipe fee” merchants incurred for credit-card transactions.
Two years later, while the authorization of discounts remained, Congress banned merchants’ use of surcharges, by again amending the Truth in Lending Act. Pub.L. No. 94-222, § 3, 90 Stat. 197 (1976) (“No seller in any sales transaction may impose a surcharge on a cardholder who elects to use a credit card in lieu of payment by cash, check, or similar means.”). At the same time, Congress clarified the distinction between “surcharge” and “discount”, by defining them according to their ordinary meaning: a “discount” is “a reduction made from the regular price”; a “surcharge”, “any means of increasing the regular price to a cardholder which is not imposed upon customers paying by cash, check, or similar means”. Id. (codified at 15 U.S.C. § 1602(q)-(r)).
When Congress extended the statute in 1981, it defined “regular price” to further distinguish between “surcharge” and “discount”:
[T]he tag or posted price charged for the property or service if a single price is tagged or posted, or the price charged for the property or service when payment is made by use of ... a credit card if either (1) no price is tagged or posted, or (2) two prices are tagged or posted, one of which is charged when payment is made by use of a ... credit card and the other when payment is made by use of cash, check, or similar means.
Cash Discount Act, Pub.L. No. 97-25, § 102, 95 Stat. 144 (1981) (codified at 15 U.S.C. § 1602(y)).
The federal ban on surcharges was renewed twice before being allowed to expire in 1984, in the face of continued criticism from consumer advocates and the Federal Reserve Board. See Financial Institutions *77 Regulatory & Interest Rate Control Act, Pub.L. No. 95-630, § 1501, 92 Stat. 3641, 3713 (1978); Cash Discount Act, Pub.L. No. 97-25, § 201, 95 Stat. 144 (1981); Cash Discount Act, 1981: Hearings on S. 414 Before Senate Banking Comm., 97th Cong., 1st Sess. 9 (18 Feb. 1981). On the other hand, and of significance here, the authorization for discounts remained. Fair Credit Billing Act, Pub.L. No. 93-495, tit. III, § 306, 88 Stat. 1500, 1515 (1974) (codified at 15 U.S.C. § 1666f(a)).
Upon the lapse of the federal anti-surcharge law in 1984, credit-card companies began reviving anti-surcharge clauses in their contracts with merchants. Similarly, States, including Texas, began enacting anti-surcharge legislation. Its 1985 anti-surcharge law provides: “In a sale of goods or services, a seller may not impose a surcharge on a buyer who uses a credit card for an extension of credit instead of cash, a check, or a similar means of payment”. S.B. 1353, 69th Leg., Reg. Sess., ch. 443, § 1, Tex. Gen. Laws 1578, 1578 (Tex. 1985) (codified at Tex. Fin.Code § 339.001(a)). The law does not ban, nor does it mention, discounts. Other States also adopted anti-surcharge legislation. See, e.g., Cal. Civ.Code § 1748.1(a), held unconstitutional by Italian Colors Rest. v. Harris, 99 F.Supp.3d 1199 (E.D.Cal.), appeal docketed, No. 15-15873 (9th Cir. 30 Apr. 2015); Colo.Rev.Stat. § 5-2-212; Conn. Gen.Stat. § 42—133ff; Fla. Stat. § 501.0117, held unconstitutional by Dana’s R.R. Supply v. Att’y Gen. of Fla., 807 F.3d 1235 (11th Cir.), reh’g denied 809 F.3d 1282 (11th Cir.2016); Kan. Stat. Ann. § 16a-2-403; Mass. Gen. Laws ch. 140D, § 28A(a)(1)-(2); Me.Rev.Stat. tit. '9-A, § 8-509; Miss. Code Ann. § 31-7-9(d) (applying only to state-issued credit cards); N.Y. Gen. Bus. Law § 518; Okla. Stat. tit. 14A, § 2-211; Utah Code Ann. § 13-38a-302 (2013), repealed by § 631-1-213 (2014).
Beginning in 2005, antitrust actions against credit-card companies challenged anti-surcharge prohibitions in their merchant contracts; the litigation resulted in Visa, Mastercard, and American Express’ removing those provisions in 2013. As a result, state laws were the only proscription against merchants’ imposing a surcharge, leading to more litigation, including this action.
This challenge to Texas’ law was filed in March 2014. The district court dismissed it for failure to 'state a claim, and denied a preliminary injunction. Rowell v. Pettijohn, No. A-14-CA-190-LY, 2015 WL 3637101 (W.D.Tex. 4 Feb. 2015).
II.
A Rule 12(b)(6) dismissal is reviewed de novo. Hines v. Alldredge, 783 F.3d 197, 200-01 (5th Cir.) cert. denied, — U.S. —, 136 S.Ct. 534, 193 L.Ed.2d 426 (mem.) (2015). The dismissal will be affirmed “when the plaintiff has not alleged enough facts to state a claim to relief that is plausible on its face or has failed to raise its right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)”. Raj v. La. State Univ., 714 F.3d 322, 330 (5th Cir. 2013) (quoting Bass v. Stryker Corp., 669 F.3d 501, 506 (5th Cir.2012)).
The merchants claim the surcharge prohibition “ban[s] one* disfavored way of truthfully describing lawful conduct, [arid] is a content-based speech restriction”. In other words, they maintain the law is not a permissible economic regulation, but instead requires them to convey ’their prices in a certain way: as “less” than the regular price, rather than “more” when paid with a credit card, although, they contend, mathematically, the result is the same. Additionally, the merchants assert they cannot advertise two prices (dual pricing—a *78 higher price for credit, and a lower price for cash, check, or similar means of payment (cash)) for fear[1] of inadvertently describing the. price for credit-card transactions as “higher” than the regular price, and thereby violating Texas’ law. Based on that fear, they state their prices are higher for all their customers, regardless of whether they pay by credit card or cash. The merchants concede, however, that dual pricing is legal under Texas’. law. They also assert the law is unconstitutionally vague because the distinction between a .surcharge and a discount is purely semantic, -and difficult to abide by in practice.
In response, the Commissioner contends the law does not restrict how a merchant may convey price- to the consumer, but rather is a permissible economic regulation under Texas’ police power. She maintains the law prevents merchants from imposing surcharges on consumers who pay with credit cards—nothing more. Any impact on speech as.a result of the law, the Commissioner claims, is merely incidental to the ban against credit-card surcharges, and does not implicate the First Amendment. Additionally, the Commissioner asserts the law limits consumer confusion and protects from the potential for windfall profits merchants could collect by imposing surcharges for credit-card transactions that ave .higher than the concomitant credit-card “swipe fees”.
A.
Before addressing Texas’ law, it is helpful to consider the circuit split, resulting from our sister circuits’ recently ruling on state anti-surcharge bans.
1.
The second circuit upheld New York’s anti-surcharge law, reversing the district court. Expressions Hair Design v. Schneiderman, 808 F.3d 118 (2d Cir.), amending and superseding 803 F.3d 94 (2d Cir.2015). Conversely, the eleventh circuit held Florida’s anti-surcharge law violated merchants’ First Amendment free-speech rights. Dana’s R.R. Supply, 807 F.3d at 1235.
a.
The second circuit held New York’s law was a legal economic regulation that did not implicate the First Amendment. Expressions, 808 F.3d at 122. That law provided in relevant part: "No seller in any sales transaction may impose a surcharge on a holder who elects to use a credit card in lieu of payment by cash, check, or similar means.” Id. at 124; N.Y. Gen. Bus. Law § 518. In challenging the law, merchants claimed, inter alia, it violated the First Amendment’s Free Speech Clause. Expressions, 808 F.3d at 121-22. They asserted they wanted to assess a single price for their goods and services, and charge an additional “surcharge” to credit-card customers in order to offset credit-card companies’ “swipe fees”, but feared that such a pricing scheme would be prohibited by the anti-surcharge law. Id. at 126, 128-29.
The district court, inter alia, permanently enjoined enforcement of the. law, stating it-“burdenfed] speech by drawing the line between prohibited surcharges and permissible discounts based on words and labels, rather than economic realities”. Id. at 127 (alterations and internal quotation marks omitted), The court additionally determined the law was void for vagueness because it “turn[ed] on the labels that sellers use to describe their prices”. Id.
In reversing, the second circuit held the law “does not violate the First Amendment as applied to single-sticker-price sellers”. Id. at 130, 141. The court stated “that prices, although necessarily communicated *79 through language, do not rank as ‘speech’ within the meaning of the First Amendment”. Id. at 130. It further clarified: “[The law] - does not prohibit sellers from referring to credit-cash price differentials as credit-card surcharges, or from engaging in advocacy related to credit-card surcharges; it simply' prohibits imposing credit-card surcharges.... [The law] regulates conduct, not speech”. Id at 131 (internal quotation marks omitted) (citing Rumsfeld v. Forum for Acad. & Institutional Rights, 547 U.S. 47, 60, 126 S.Ct. 1297, 164 L.Ed.2d 156 (2006)).
With regard to the merchants’assertion the law applied to sellers who use pricing schemes outside of “single-sticker” prices, such as' “dual-pricing” (again, posting one price for credit-card users, and another for those who use cash), the court abstained from reaching the merits of the issue under Railroad Commission of Texas v. Pullman Co., because doing so implicated an unsettled state-iaw question: whether the law prohibits pricing schemes ’ other than “single sticker”. Id. at 135-37 (citing Pullman, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941)).
The court also reversed the district court’s holding the law is unconstitutionally vague, ruling it “has a core meaning that can be reasonably understood: sellers who post single sficker prices for them goods and services may not charge credit-card customers an additional amount above the sticker price that is not also charged to cash customers”. Id. at 142 (internal quotation marks omitted).
b.
By contrast, in Dana’s Railroad Supply, the eleventh circuit struck down Florida’s anti-surcharge law, holding it regulated the content of merchants’ speech, in violation of the First Amendment 807 F.3d at 1239. The Florida law provided, in relevant part: “A seller ... may not impose a surcharge on the buyer ... for electing to use a credit card in lieu of payment by cash, check; or similar m'earis— This section does not apply to the offering of a discount for the purpose of inducing payment by cash, check, or other means not involving the use of a credit card”. Id at 1242; Fla. Stat. § 501.0117.
In determining the law did not regulate economic conduct, the court ruled it targeted “expression alone”, and “there is no real-world difference between [a surcharge and discount]”. Dana’s R.R. Supply, 807 F.3d at 1245. The court held the statute, therefore, restricted the content of merchants’ speech: the manner in which they could describe their pricing scheme. Id.
The court then assumed, arguendo, the law implicated commercial-speech content, and analyzed it under the more lenient Central Hudson intermediate-scrutiny standard. Id. at 1246, 1249; Cent. Hudson Gas v. Pub. Serv. Comm’n of N.Y., 447 U.S. 557, 564, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980) (describing the four-pronged test for commercial speech). Under, that standard, “restrictions directed at commerce or conduct may be upheld—assuming they further a substantial government interest and . are narrowly tailored—even if they impose incidental burdens on speech”. Dana’s R.R. Supply, 807 F.3d at 1246 (alterations and internal quotation marks omitted).
In holding the law “founder[ed] at every step” of thé commercial-speech-analysis, the court “struggled] to identify a plausible governmental interest that would be served by the no-surcharge law”. Id. at 1249. It held that, although “[the law] purports to regulate commercial behavior, [it] has the sole effect of banning merchants from uttering the word surcharge ”, a violation of the First Amendment. Id at 1251 (emphasis in original).
*80 2.
a.
As discussed infra, violation of Texas’ law can result in a penalty’s being imposed in a civil action. Although none of the merchants at hand have been challenged in that manner for violating Texas’ law, their claims are ripe for review. As in. the actions before the second and eleventh circuits, the merchants in this action adequately expressed “they were presently chilled from implementing their preferred pricing scheme, and ... had standing based on a credible fear [Texas’ law] would be enforced against them”. Expressions, 808 F.3d at 127; see also Dana’s R.R. Supply, 807 F.3d at 1241.
b.
“States are accorded wide latitude in the regulation of their local economies under their police powers”. Howard v. City of Garland, 917 F.2d 898, 901 (5th Cir.1990) (alterations omitted) (quoting City of New Orleans v. Dukes, 427 U.S. 297, 303, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976) (discrimination claim)); see also Am. Real Estate Inst., Inc. v. Ala. Real Estate Comm’n, 605 F.2d 931, 933 (5th Cir.1979). “[A] state is free to adopt whatever economic policy may reasonably be deemed to promote public welfare, and to enforce that policy by legislation adapted to its purpose”. Nebbia v. People of N.Y., 291 U.S. 502, 537, 54 S.Ct. 505, 78 L.Ed. 940 (1934) (upholding lawsetting prices for milk); see also Munn v. People of State of Ill., 94 U.S. (4 Otto) 113, 125, 24 L.Ed. 77 (1876) (“In their exercise [of these powers] it has been customary— in this country from its first colonization, to regulate ferries, common carriers, hackmen, bakers, millers, wharfingers, innkeepers, & c., and in so doing to fix a maximum of charge to be made for services rendered, accommodations furnished, and articles.sold.”).
Toward that end, “the First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech”. Sorrell v. IMS Health Inc., 564 U.S. 552, 131 S.Ct. 2653, 2664, 180 L.Ed.2d 544 (2011). In that regard, our court has held merchants may- not “bootstrap themselves into the heightened scrutiny of the First Amendment simply by infusing the prohibited conduct with some element of speech”. Ford Motor Co. v. Tex. Dep’t of Transp., 264 F.3d 493, 506 (5th Cir.2001) (prohibition of direct sale of automobiles from manufacturer to consumer did not implicate First Amendment).
Reviewing the parties’ claims de novo, and in the light of the States’ broad authority to regulate economic conduct, we hold Texas’ law regulates conduct, not speech, and, therefore, does not implicate the First Amendment. Instead, the law ensures only that merchants do not impose an additional charge above the regular price for customers paying with credit cards. Again, it states: “In a sale of goods or services, a seller may not impose a surcharge on a buyer who uses a credit card for an extension of credit instead of cash, a Check, or a similar means of payment”. Tex. Fin.Code § 339.001(a). Along that line, the second circuit’s reasoning' in ' upholding New York’s anti-surcharge law is persuasive. Expressions, 808 F.3d at 127-35.
i.
The text of Texas’ law provides the first indication that it regulates conduct, not speech. See Dana’s R.R. Supply, 807 F.3d at 1242-43. The Texas, like the New York, law does not define “surcharge”, nor does it address “discounts” or any other pricing schemes beyond imposing surcharges for credit-card transactions. Tex. *81 Fin.Code § 339.001(a); N.Y. Gen. Bus. Law § 518. Therefore, we understand the statutory terms according to their ordinary meaning. E.g., United States v. Transocean Deepwater Drilling, Inc., 767 F.3d 485, 490 (5th Cir.2014). Pursuant to a plain reading of the Texas- law, it bans surcharges, and is otherwise completely silent regarding other forms of pricing. Tex. Fin.Code § 339.001(a). Therefore, similar to New York’s law, Texas’ does not forbid merchants from charging cash customers a different price than that charged to credit-card customers. Expressions, 808 F.3d at 130-31.
Instead, as 'the second circuit held in Expressions for New York’s law, Texas’ “forbids charging credit-card customers an additional amount above the regular price that is not also charged to cash customers, but it permits offering cash customers a discount below the regular price .that is not also offered to credit-card customers”. Id. at 128 (emphasis in-original). In other words, a plain reading of the statute indicates that a “surcharge” is not the same as a “discount”, contrary to the merchants’ assertions. While a merchant may have the same ultimate economic result if it applies the same amount in the form of a credit-card surcharge that it would otherwise apply as a cash discount, the law does not require that.
On the contrary, , as the parties concede, Texas’ law allows a merchant to discount and dual-price as it wishes; these amounts are not required to be the amount of the “swipe fees” the merchants maintain are at issue. As the second circuit persuasively noted:
[T]he central flaw in [the merchants’] argument [ ] is their bewildering persistence in equating the actual imposition of a credit-card surcharge (i.e., a seller’s •choice to charge an additional amount above the sticker price to its credit-card customers) with the words that speakers of English have chosen to describe that pricing scheme— But Plaintiffs are simply wrong. What [the New York law] regulates—all that it regulates—is the difference between a seller’s sticker price and the ultimate price that it charges to credit-card customers. A seller imposing a surcharge (an additional amount above its sticker price) on credit-card customers could choose to “characterize” that additional charge as whatever-it wants, ¡but that-would not change the fact that it would be violating [the New York law].
Expressions, 808 F.3d at 131-32 (emphasis added).
This understanding of the. - anti-surcharge law fits neatly- within the lapsed federal version of, the law, from which the state anti-surcharge laws arose, and - the federal statutory definition of surcharge: “an additional amount above the seller’s regular price”. See id. at 132; 15 U.S.C. § 1602(r); Pub.L. No. 94-222, 90 Stat. 197 (1976). Precisely what the merchants maintain they are prevented from “characterizing” is what is prohibited economic conduct under the law: imposing surcharges.
“Fifth Circuit law is crystal clear that when, as here, the language of-a statute is unambiguous, - this Court has no need to and will not defer to extrinsic aids or legislative history.” Hamilton v. United Healthcare of La., Inc., 310 F.3d 385, 392 (5th Cir.2002) (quoting Guilzon v. Comm’r of Internal Revenue, 985 F.2d 819, 823 n. 11 (5th Cir.1993)). On the other hand, the legislative history of the Texas law, discussed supra, illuminates the law’s simply forbidding merchants’ imposing credit-card- surcharges. The bill’s sponsor noted the law was intended to ban surcharges, or “an • added cost over -and above the regularly marked price on goods *82 and services”. Hearings on Tex. H.B. 1558 Before the House Comm. on Fin. Insts., 69th Leg. R.S. (22 Apr. 1985). .Furthermore, he stated that,, “until the federal government places a permanent ban on [credit-card surcharges], I believe it is in our best interest to protect the consumer”. Id. His statements reflect the Texas, legislators’ intent in enacting--the law: to prohibit additional costs above the “normal” price, in the interest of the consumer. If the Texas legislature' had wished to also ban discounts, it could have done so.
In sum, the merchants” assertion Texas’ law regulates what they say,' rather than what they do, is unavailing. See Rumsfeld, 547 U.S. at 60, 126 S.Ct. 1297 (holding a law requiring schools to “afford equal access -to military recruiters” regulates “conduct, not speech. It affects what law schools must do ... not what they may or may not say.” (emphasis in original)).
ii.
Consequently, Texas’ law concerns pricing regulation; and, again, as the second circuit noted: “[P]rices, although necessarily communicated through language, do not rank as ‘speech’ within the meaning of the First Amendment”. Expressions, 808 F.3d at 130. The court continued: “This principle is illustrated most vividly by the fact that price-control laws, - which necessarily prevent sellers from communicating certain (illegal) prices, have never been thought to implicate the First Amendment”. Id. A State’s authority to regulate the “prices to be charged for the products or commodities [a business] sells”, Nebbia, 291 U.S. at 537, 54 S.Ct. 505, does not implicate the First Amendment. Expressions, 808 F.3d at 130-31 (citing 44 Liquormart, Inc. v. Rhode Island, 517 U.S. 484, 504-08, 116 S.Ct. 1495, 134 L.Ed.2d 711 (1996) (plurality opinion); accord id. at 524, 116 S.Ct. 1495 (Thomas, J., concurring in part and concurring in the judgment); id. at 530, 116 S.Ct. 1495 (O’Connor, J., concurring in the judgment); Nat’l Ass’n of Tobacco Outlets, Inc. v. City of Providence, 731 F.3d 71, 77 (1st Cir.2013) (holding prohibition on discounts -for .tobacco products by coupons and,, multi-packs regulated economic conduct)). The States’ power- extends beyond price ceilings and floors- to having the authority to set “regular” versus “excessive” or “unreasonable” price restrictions. See, e.g., O’Gorman &, Young, Inc. v. Hartford Fire Ins. Co., 282 U.S. 251, 257-58, 51 S.Ct. 130, 75 L.Ed. 324 (1931) (upholding prohibition of “unreasonable” insurance commissions).
And, “[i]f prohibiting certain prices does not implicate the --First Amendment, it follows that- prohibiting certain relationships between prices also does not implicate” it. Expressions, 808 F.3d at 131. Based on the plain-language of Texas’ law, simply -imposing credit-card surcharges is prohibited; as the Commissioner points out, the merchants are not prevented from- “informing customers about the cost of credit, encouraging them to use cash, or-expressing views on pricing policy more generally’. See Rumsfeld, 547 U.S; at 62, 126 S.Ct. 1297.
Furthermore, simply speaking about the prices regulated by Texas’ law does not transform it into a content-based speech restriction; the speech is merely incidental to the regulated -economic conduct. See Ford Motor, 264 F.3d at 506. In Roark & Hardee LP v. City of Austin, for example, our court held the regulation requiring restaurant owners to verbally request that smokers extinguish their cigarettes or leave the premises did not implicate the First Amendment. 522 F.3d 533, 549-50 (5th Cir.2008). The owners’ speech was incidental to the no-smoking law, and was not protected commercial speech. Id. at *83 550. Similarly, any speech regarding surcharges or discounts is incidental to Texas’ ban on imposing credit-card surcharges.
Unlike in Expressions, the merchants in this action do not claim Texas’ law forbids a dual-pricing scheme. Therefore, - we have no reason, as the second circuit did, to abstain under Pullman. 312 U.S. 496, 61 S.Ct. 643; see also, e.g., Nationwide Mut. Ins. Co. v. Unauthorized Practice of Law Comm. of State Bar of Tex., 283 F.3d 650, 653 (5th Cir.2002) (“[T]here must be an uncertain issue of state' law that is ‘fairly susceptible’ to an interpretation that would render it unnecessary for us to decide the federal constitutional questions in a case.”). .
Indeed, the-second circuit’s decision to abstain pursuant to Pullman arose under circumstances distinguishable from those at issue here. " In Expressions, as discussed supra, the court first held the New York anti-surcharge law did not implicate the First Amendment in the context of applying either a discount or a surcharge to “single-sticker-price schemes”. 808 F.3d at 135. It then questioned whether the law could be applied in the dual-pricing context, when the law'did not address any other pricing scheme but the ban on credit-card surcharges. Id. at 135-38. The merchants in that action maintained the law prevented them from engaging in any kind of dual pricing. Id. at 135. Here, on the other hand, the parties concede dual pricing is allowed; the merchants simply object to their inability to characterize price differentials as a “surcharge”, juxtaposed with a “discount”.
Moreover, the eleventh circuit’s holding the Florida anti-surcharge law regulated speech and not conduct, thereby implicating the First Amendment, is unavailing for Texas’ law. As stated supra, that court characterized a surcharge as a “negative discount”, and stated there was “no real-world difference” between the two. Dana’s R.R. Supply, 807 F.3d at 1245. (The Florida law expressly excluded “discounts” from' the restriction, while New York’s and Texas’ laws are silent regarding pricing schemes other than applying surcharges. . Compare Fla. Stat. § 501.0117(1)-(2) with N.Y. Gen. Bus. Law § 518 and Tex. Fin.Code § 339.001(a).) Additionally, it compared the pricing regulation, to a law banning “half-empty” beyer-ages, while allowing those that are “half) full”. 807 F.3d at 1245 (emphasis. omitted). The eleventh .circuit’s .distinguishing between a “surcharge” and a “discount” overlooks differences in the economic activity, and that the anti-surcharge law solely bans application.of additional fees above the normal price and nothing .more. Therefore, the end result of a discount does not always equal a surcharge.
B.
 “A statute is unconstitutionally vague if it does not give a ‘person of ordinary intelligence a reasonable opportunity to, know what is prohibited.’ ” Groome Res., Ltd., L.L.C. v. Par. of Jefferson, 234 F.3d 192, 217 (5th Cir.2000) (quoting United States v. Bird, 124 F.3d 667, 683 (5th Cir.1997)) (quoting Grayned v. City of Rockford, 408 U.S. 104, 108, 92. S.Ct. 2294, 33 L.Ed.2d 222 (1972)). For obvious reasons, a civil law “is. subject to a less strict vagueness test” than a criminal law. Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 498-99, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982); Groome, 234 F.3d at 217.
Under Texas administrative law, the Commissioner may seek civil penalties against a merchant who violates Texas’ anti-surcharge law. See 7 Tex. Admin. Code § 4.104.(discussing service of notice for. civil action);. Tex. Fin.Code § 339.001(c)-(d) (giving the Finance Com *84 mission of Texas exclusive authority to enforce and adopt rules relating to § 339.001). As the merchants concede, in civil actions, a law is void for vagueness only if its ‘‘‘terms [are] so vague and indefinite as really to be no rule or standard at all' or [are] substantially incomprehensible”. Ford Motor, 264 F.3d at 507-08 (alterations, citations, and internal quotations marks omitted).
Largely for the reasons discussed supra, Texas’ law is not unconstitutionally vague. The law has a “core meaning that can reasonably be understood”. Expressions, 808 F.3d at 142. And, as stated, words are given their ordinary meaning unless defined otherwise in the statute. Hamilton, 310 F.3d at 391-92. A plain reading of Texas’ law shows it forbids a merchant from imposing an extrá charge for a purchase with a credit card, and is completely silent as to any other form of pricing. Tex. Fin.Code § 339.001(a).
Moreover, “a federal court must construe a state statute to avoid a constitutional’ problem if the statute is ‘susceptible of such a construction’ ”. Dana’s R.R. Supply, 807 F.3d at 1253 (Carnes, C.J., dissenting) (alterations omitted) (quoting S. Utah Mines & Smelters v. Beaver Cty., 262 U.S. 325, 331, 43 S.Ct. 577, 67 L.Ed. 1004 (1923)). Here, even if there is any vagueness in the Texas statute, it can be construed to eliminate that vagueness. Expressions, 808 F.3d at 144 (citing Skilling v. United States, 561 U.S. 358, 403-04, 130 S.Ct. 2896, 177 L.Ed.2d 619 (2010) and United States v. Lanier, 520 U.S. 259, 266, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997)). By reading the statute to mean what it states, merchants cannot charge an extra fee in transactions paid with a credit card; therefore, the largely hypothetical scenarios in which the merchants complain of vagueness are eliminated. Moreover, as stated supra and as the parties concede, the law does not prohibit merchants from advertising two prices.
III.
For the foregoing reasons, the judgment is AFFIRMED.

. As the majority opinion states, the Texas Anti-Surcharge Law, in pertinent part, provides: "In a sale of goods or services, a seller . may not impose a surcharge on a buyer who uses a credit card for an extension of credit instead of cash, a check, or a similar means of payment.”